**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **BASSFIELD IP LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **STARBUCKS CORPORATION,** <br><br> Defendant. | C.A. No. 6:22-cv-536 <br><br> **JURY TRIAL DEMANDED** <br><br> **PATENT CASE** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Bassfield IP LLC files this Original Complaint for Patent Infringement against Starbucks Corporation and would respectfully show the Court as follows:

**I. THE PARTIES**

1. Plaintiff Bassfield IP LLC ("Bassfield" or "Plaintiff") is a Texas limited liability company having an address at 6009 W Parker Rd, Ste 149 - 1086, Plano, TX 75093.

2. On information and belief, Defendant Starbucks Corporation ("Defendant") has places of business at 1428 Wooded Acres Dr #200, Waco, TX 76710, 2609 J H Kultgen Expy Building A, Suite #1, Waco, TX 76711, 2452 W Loop 340 A, Waco, TX 76711, 1301 S 2nd St, Waco, TX 76798, and 101 Bagby Ave, Waco, TX 76706. Defendant has a registered agent at Corporation Service Company D/B/A/ CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

**II. JURISDICTION AND VENUE**

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

1

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein, at locations including 1428 Wooded Acres Dr #200, Waco, TX 76710, 2609 J H Kultgen Expy Building A, Suite #1, Waco, TX 76711, 2452 W Loop 340 A, Waco, TX 76711, 1301 S 2nd St, Waco, TX 76798, 101 Bagby Ave, Waco, TX 76706, 600 Congress Ave, Suite G-270, Austin, TX 78701, 110 East Second Street, Austin, TX 78701, 300 4th Street, Austin, TX 78701, 301 West 3rd Street, Austin, TX 78701, 555 East 5th Street, Austin, TX 78701, 208 Barton Springs Road, Austin, TX 78704, and 907 West, 5th Street, Suite 102, Austin, TX 78703.

5.      Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Texas. Defendant has committed such purposeful acts and/or transactions in Delaware such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant has businesses in this district, including at 1428 Wooded Acres Dr #200, Waco, TX 76710, 2609 J H Kultgen Expy Building A, Suite #1, Waco, TX 76711, 2452 W Loop 340 A,

2

Waco, TX 76711, 1301 S 2nd St, Waco, TX 76798, 101 Bagby Ave, Waco, TX 76706, 600 Congress Ave, Suite G-270, Austin, TX 78701, 110 East Second Street, Austin, TX 78701, 300 4th Street, Austin, TX 78701, 301 West 3rd Street, Austin, TX 78701, 555 East 5th Street, Austin, TX 78701, 208 Barton Springs Road, Austin, TX 78704, and 907 West, 5th Street, Suite 102, Austin, TX 78703.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7. For these reasons, personal jurisdiction exists, and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.  COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 6,641,053)

8. Plaintiff incorporates the above paragraphs herein by reference.

9. On November 4, 2003, United States Patent No. 6,641,053 ("the '053 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '053 Patent is titled "Foreground/Background Document Processing with Dataglyphs."  A true and correct copy of the '053 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10. Bassfield is the assignee of all right, title, and interest in the '053 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '053 Patent.  Accordingly, Bassfield possesses the exclusive right and standing to prosecute the present action for infringement of the '053 Patent by Defendant.

11. The invention in the '053 Patent relates to the field of systems and methods for creating documents containing encoded data and human-readable data, and to devices and methods for encoding and decoding documents containing machine readable text overlaid with human-readable content and graphics. (Ex. A at 1:31-36). The object of the invention is to provide an

3

efficient method for integrating machine-readable information with human-readable information. (*Id.* at 2:38-49).

12. Prior art electronic document processing systems included input scanners for capturing the human readable information allowing users to manipulate electronic documents and printers for producing the manipulated hardcopy versions of the document. (*Id.* at 1:40-47). These systems were typically connected to convenient to access mass memory and local area networks allowing for multiple users to access the electronic documents (*Id.* at 1:47-54).

13. At the time of invention, no universal interchange standard for losslessly interchanging structured electronic documents existed, with plaint text ASCII encoding becoming the de facto interchange standard, however it was limited in its utility for representing structed electronic documents. (*Id.* at 1:57-65). Additional methods existed but were system specific, employing embedded control codes for supplementing ASCII encodings to define the logical structures of electronic documents allowing such documents to be formatted in accordance with selected variables such as font styles and sizes, line and paragraph spacings, and more. (*Id*. at 1:65-2:9). Therefore, it was important when transporting electronic documents from one system to another was the ability of the target system to interpret the encoding format that the source system used. (*Id*. at 2:17-22).

14. Prior art methods for transporting documents included printing digital data, on a recording medium like plain paper, so optical readers could upload the data into electronic document processing systems. (*Id.* at 2:30-38). This method would have the machine-readable codes printed at various locations on one hardcopy and on a separate copy, the human-readable content of the same document at a separate location. (*Id.* at 2:38-41). The approach of having machine readable content at separate locations from human-readable content has its drawbacks

because the amount of machine-readable information that may be stored on a page is more limited since the areas for storing machine-readable information may not overlap with the human-readable information. (*Id.* at 2:51-55). Therefore, the inventors recognized the importance of could better integrate machine-readable content with human-readable content in an efficient manner. (*Id.* at 3:7-23). With that in mind, the inventors created a method using background glyph codes with an integrated human-readable image that does not interfere with the decoding of the glyph codes. (*Id.* at 3:12-23).

15. **<u>Direct Infringement.</u>** Upon information and belief, Defendant has been directly infringing claim 1 of the '053 Patent in Texas, and elsewhere in the United States, by performing a method for producing machine-readable and human-readable documents Defendant's composite machine-readable and human read-able document (*e.g.*, Starbucks ("Accused Instrumentality")). The Accused Instrumentality practices a method of producing a composite machine-readable and human-readable document (*e.g.*, a scannable QR code). As shown, the Accused Instrumentality produces a composite machine-readable and human readable document – QR Code containing the data cells (machine readable) and the logo of the accused instrumentality (Human-readable).



(*E.g.*, https://www.starbucks.com/).

Case 6:22-cv-00536-ADA-DTG   Document 1   Filed 05/25/22   Page 6 of 14



(*E.g.*,   https://p18cdn4static.sharpschool.com/UserFiles/Servers/Server_27933076/File/Students/

Weekly%20Bulletin/StarbucksFlyer.pdf).



(*E.g.*, https://www.explainthatstuff.com/how-data-matrix-codes-work.html).

6

16. The Accused Instrumentality practices generating a background image (*e.g.*, QR code containing data cells) on a substrate (*e.g.*, the screen (*i.e.*, QR code displayed on screen.)), said background image comprising coded glyphtone cells based on grayscale image data values, each of said halftone cells comprising one of at least two distinguishable patterns (*e.g.*, white and black patterns). As shown, Defendant practices generating a QR image for reading details of the product. The QR comprises coded data cells based on grayscale. Each data cell being colored in either white or black.





(*E.g.*, https://p18cdn4static.sharpschool.com/UserFiles/Servers/Server_27933076/File/Students/Weekly%20Bulletin/StarbucksFlyer.pdf).

By their very nature, QR codes (and other data matrix codes) are meant to be read by machines, not humans, so there's only a certain amount we can tell just by looking at them. Although each code is different, they contain a few interesting, common features. Looking again at the explainthatstuff.com QR code up above, we have:

*Artwork: Above: Some of the key features in a QR code. Below: Features like this ensure a code can be read at high speed even when it's viewed at an angle, smudged, printed on a curved surface, or distorted in various other ways.*

1. **Quiet zone**: An empty white border that makes it possible to isolate the code from among other printed information (for example, on a dirty envelope, among the black and white print of a newspaper, or on smudged product packaging).

2. **Finder patterns**: Large black and white squares in three of the corners make it easy to confirm that this is a QR code (and not, say, an Aztec code). Since there are only three of them, it's immediately obvious which way up the code is and which angle it's pointing at (unless the code is partly obscured or damaged in some way).

3. **Alignment pattern**: This ensures the code can be deciphered even if it's distorted (viewed at an angle, printed on a curved

4. **Timing pattern**: This runs horizontally and vertically between the three finder patterns and consists of alternate black and white squares. The timing pattern makes it easy to identify the individual data cells within a QR code and is especially useful when the code is damaged or distorted.

5. **Version information**: There are various different versions of the QR code standard; the version information (positioned near two of the finder patterns) simply identifies which one is being used in a particular code.

6. **Data cells**: Each individual black or white square that's not part of one of the standard features (the timing, alignment, and other patterns) contains some of the actual data in the code.

(*E.g.*, https://www.explainthatstuff.com/how-data-matrix-codes-work.html).

8

Partners also enjoy excellent benefits like sharing in our financial success through 401(k) savings and stock programs, as well as:

- Medical, dental and vision coverage
- College Achievement Plan
- Paid vacation
- FREE Spotify Discounts on coffee and other items in our stores





Become a partner.
starbucks.com/careers

(*E.g.*, https://p18cdn4static.sharpschool.com/UserFiles/Servers/Server_27933076/File/Students/Weekly%20Bulletin/StarbucksFlyer.pdf).



(*E.g.*, Testing on a user's smartphone QR reader app).



(*E.g.*, Testing on a user's smartphone QR reader app).

17. The Accused Instrumentality practices compositing the background image (*e.g.*, QR code containing the data cells) with a second image (*e.g.*, the Accused Instrumentality logo) such that two or more adjacent visible halftone cells may be decoded and the second image may be viewed. As seen the second image (*i.e.*, the Accused Instrumentality logo) can be viewed.





(*E.g.*, https://p18cdn4static.sharpschool.com/UserFiles/Servers/Server_27933076/File/Students/Weekly%20Bulletin/StarbucksFlyer.pdf).

- FREE Spotify Discounts on coffee and other items in our stores





(*E.g.*, https://p18cdn4static.sharpschool.com/UserFiles/Servers/Server_27933076/File/Students/Weekly%20Bulletin/StarbucksFlyer.pdf).

18. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '053 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

19. The claims of the '053 patent are method claims to which the marking requirements are not applicable. Plaintiff has therefore complied with the marking statute.

### V. JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of United States Patent No. 6,641,053 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

d. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

May 25, 2022                                  Respectfully Submitted,

                                              */s/ David R. Bennett*
                                              David R. Bennett
                                              (*Admitted to the U.S. Dist. Ct. for the W.D. Texas*)
                                              Direction IP Law
                                              P.O. Box 14184
                                              Chicago, IL 60614-0184
                                              (312) 291-1667
                                              dbennett@directionip.com

                                              *Attorneys for Plaintiff Bassfield IP LLC*